Good morning, Your Honors. Your Honor, I ask to reserve three minutes for rebuttal. Very well granted. Your Honors, this case epitomizes the saying that litigation is not error-free. That's an understatement. The facts as I see it, the procedure history of this case is quite complicated, and I am going to make an attempt to parse the different cases and facts for this court that I believe are relevant to this appeal. Before you get to the facts, and I don't mean to exclude that because they are complicated, but there is an issue of appellate jurisdiction in this case, and I think it would probably be advisable to address that as a threshold issue before you get into the very complicated facts in these several matters and how they made their way here. Your Honor, there are several issues of appellate jurisdiction which I think have to be informed by the facts. First, let's take the O2 case. Initially, in this matter, Guerrero filed an initial complaint. Before the complaint was answered in superior court, an amended complaint was filed naming additional plaintiffs. Shortly after that, that first complaint was removed. Yes, but, counsel, the other side had not been served with the first complaint yet. By the time they removed... Isn't that... The other side... They had not been served with the second complaint by the time they removed the first complaint. They had not been served with the amended complaint by the time it was removed. Right. Your Honor, the removal was asked to the entire complaint as amended. That's appellant's position. I understand. Please, however, tell me how and why this court has appellate jurisdiction over an appeal by anyone other than Mr. Guerrero. We don't need to rehash all the procedural history of these cases for us to be able to focus on how and why you maintain we have jurisdiction over an appeal implicating any rights of Williams and Matthews when their names did not appear on the notice of appeal. Your Honor, we submit that the names did not appear on the notice of appeal, but the notice of appeal I submitted, Your Honor, did say plaintiffs. This court has recently... The notice of appeal said plaintiffs. Borrow. Is that your position? Yes, I... Because the notice of appeal that is in the appendix at page 22 indicates the signature of Ms. Roan appearing under attorneys for plaintiff. And on the caption on the page before, it's Leonte Guerrero, plaintiff. Two places for each of the two consolidated cases, plaintiff. The language of the notice of appeal itself, appellant, plural, Leonte Guerrero. No mention anywhere that I can see in the notice of appeal of anybody other than Mr. Guerrero. And we agree on that. Correct, Your Honor, but I believe the additional filings made by... When the fee was paid, all three names were on it, but that was on August 29th, and that would not be timely for an appeal by the other putative plaintiffs. Your Honor, but under federal rules of appellate procedure 4B, if this court has interpreted that not as jurisdictional, but the Supreme Court has said that it may encompass an inflexible administrative ruling, we are arguing that all the additional submissions before this court gave notice that all appellants were appealing. And that this... But as Judge Roth has indicated, there was not a single piece of paper filed within the 30-day period suggesting that there was anyone other than Mr. Guerrero who was appealing. Isn't that correct? That is correct, Your Honor, but the federal rules has avenues where a person can remedy mistakes. And I believe it's federal rules of appellate procedure 4B that says if there's a filing within 30 days, within an additional 30 days, that the court... The Supreme Court has told us as recently as this year in Bells v. Russell that the 30-day period in a civil action is jurisdictional. Now, the cases have also provided some leeway in not adhering to a hyper-technical set of rules relative to what has to be in the notice of appeal. There are suggestions that some piece of paper filed in addition to a notice of appeal that provides notice and an indication that someone else is appealing can pass muster. But you can't point to anything within that 30-day period. So rather than...unless another member of the panel has questions on this jurisdictional issue, probably we should move on so you can touch on some of the other issues in the time that remains to you. If we determine that we do have jurisdiction in the appeal, we can consider it. Your Honor, the other issues are now the merits of Mr. Guerrero's appeal. Which really would be the complete preemption issue. Correct, Your Honor. And we are saying that certain facts about this case is very like this Third Circuit case in Burdor where the CBA came into existence after Mr. Guerrero had been working with Triangle. In addition to that, the checkered facts of this case show that not all of Mr. Guerrero's claims were completely preempted. That certain cases could stand...certain claims could stand on its own and that mere reference to CBA as here does not constitute a complete preemption of all of Mr. Guerrero's claims. Do you concede that any of those claims are completely preempted? They are to the extent, Your Honor, that part of Mr. Guerrero's bad faith claim requires consideration of the testing policy only to that extent. And the testing policy is set out in the CBA, is it not? Yes, the testing policy... It really requires us to look to the CBA and to review at least one of the paragraphs of the CBA. But Your Honor, that doesn't go...that does not really go to all of Mr. Guerrero's claims. Mr. Guerrero made state law claims that can be resolved without reference to the CBA. Describe those for us. Pardon? Describe those for us. Well, Mr. Guerrero's fraud claim. Your Honor, remember at the time that Triangle did not submit Mr. Guerrero's notice to the fledgling union, this union was only in existence maybe three months before... Doesn't your law firm also represent the union? Correct, Your Honor. Isn't there... But in a limited... Isn't there an inherent conflict of interest between Mr. Guerrero and the union where you're saying that his claim wasn't submitted? I'm very concerned about that. Your Honor, we do not believe it's an inherent conflict of interest Triangle prevented the union from submitting this claim. Triangle did not give the union the notice they were supposed to give. So the union is saying that, yes, we did not do what we were supposed to do, but we prevented. So basically the union has authorized Mr. Guerrero to proceed with this claim. But by not making a claim against the union, and by that I mean by not naming the union as a defendant or at least by not making any allegations of a failure to provide fair representation, you have precluded this plaintiff from making anything in the nature of a hybrid Section 301 claim, have you not? You can't do it without at least allegations against the union. Your Honor, I think the allegations made in the complaint that the union was prevented from submitting the claims is sufficient for the fair representation that they could not... It was... It comes under the arbitrary... The union could not... The arbitrary prong of the hybrid test. The union could not proceed or the union failed to do something. But the reason for that failure was the actions of the employer. I understand that that's the contention being made. But the, I will say, at least apparent conflict of interest here would have precluded you, your law firm I mean, from making any allegation of wrongdoing against the union, would it not? You couldn't do it and not have a conflict of interest. Your Honor, I believe we had waivers on that. Yes, yes. And the waiver came after one of your law firm's lawyers himself suggested, and this is in the record, that he did not see this as a real conflict of interest. Your Honor, as I began my presentation, the facts are unusual in this case. And the question is whether or not these two parties could waive this conflict. And we have a waiver as to the conflict. We understand that. Your time has expired, but you've reserved time on rebuttal. We'll have you back on rebuttal. Thank you. May it please the Court. Charles Engelman on behalf of Triangle Construction and Maintenance. Good morning, Your Honor. There are numerous issues in this case concerning the conduct of plaintiffs, now appellants, counsel in this matter. We filed a motion to disqualify before this Court. We believe that the issues of conflict . . . You haven't really pursued that on appeal, have you? I understand you lost it before the district court, but you really haven't pursued it with us. No, Your Honor. We filed a separate motion to disqualify with this Court. We believe this Court, sua sponte or on motion, has jurisdiction to rule on the issues of the conflict of issue in front of this Court. Unfortunately . . . Sir, when did you file that motion, Mr. Engelman? The motion to disqualify was received by the Court on July 4th. Well, no, June 4th, 2007. There was a one-line order from this Court denying the motion. But we believe, sua sponte, the Court can continue to consider the issues. It is fully briefed, substantially briefed. All right. I misunderstood you. A merits panel dealt with that question. I'm sorry, a motions panel dealt with that question and rejected your position. In the one-line decision, yes. But as we turn here, there is no appellate jurisdiction on the issue of Williams and Matthews. That is clear. What appellants have done here, appellate counsel, is continue to make misrepresentations to this Court, stating that the notice of appeal included Guerrero and Matthews. That was in the reply brief. That is absolutely untrue. They later stated that it was technically correct that they weren't included in the appeal notice, but then they point to documents filed months later as indicating that these individuals should be part of the appeal. There is no jurisdiction over the issues from Williams or Matthews, and that is clear that this Court does not have jurisdiction over it. The same with the magistrate's order. Substantial amount of the briefing was aimed at the magistrate's order. Again, not appropriately before this Court, they did not appeal that to the district court judge. There was a notice to correct the caption to try to include Matthews and Williams. Again, years into the litigation, we moved to strike that. The magistrate judge granted our motion to strike the notice to the court. That was not a dispositive motion any more than a motion to amend or a denial of a motion to amend the complaint would be a dispositive motion. The magistrate properly ruled on it. If the appellant believed that that was improper, the procedure is to file objections with the district court judge so the district court judge has an opportunity to review the issue. They failed to do that. They chose not to do that. Those issues are not before the Court. The issues that are before this Court really are not complicated. And they go to Guerrero only? Guerrero only. And those issues in the 2003 case was a Section 301 claim as amended. But again, the conflicted counsel chose not to make any allegations concerning the union. They have to. They have to. They are required to. Without that, there is no hybrid 301. Correct. And that is clear. And what they said, they did not allege a breach of the duty of fair representation by Ovalu because there is no such breach. That was in their opposition to our motion to dismiss before the district court. Of course, the district court could not consider whether there was any allegation and would not consider whether there was any allegation of a breach of the duty of fair representation when appellant's counsel had said there was no such breach. And if we look at the complaint, there is no such breach alleged in the complaint. They allege that Triangle failed to do things, wouldn't allow them to file complaints, wouldn't allow them to file grievances. That's just factually inaccurate but also legally insupportable. It doesn't matter. The question is, did the union breach the duty of fair representation? They don't allege that it did. The 301 claim would also be untimely. Again, we made clear from the beginning that we were not going to arbitrate a claim that was never filed as a grievance. This claim was never filed as a grievance. There has been back and forth by appellant's counsel as to whether or not it was filed as a grievance, but in the end they admit there was no timely grievance filed. That struck me from the very beginning of looking at this case. I mean the CBA provides at Section 6.4 a grievance procedure, and in fact there is in the torturous history of this case somehow tangentially a grievance filed but not on behalf of Mr. Guerrero, right? There was no grievance filed on behalf of Mr. Guerrero. There was no grievance filed over the testing issue, if we get down to it. They claim occasionally there was. What then is the grievance that appears in this record that's been brought to our attention? The only grievance that I believe is in the record was there was a grievance that was filed over the layoff of some individuals in May of 2002. Filed by the president of the union? Terrence Ellison filed a grievance, did not pursue it. Instead, filed an unfair labor practice charge a few months later. Subsequently, the unfair labor practice charge was amended to add another grievance that they had filed but didn't pursue. Both of those were ultimately deferred by the NLRB to arbitration. When the union still failed to bring it to arbitration a year later, the NLRB dismissed the unfair labor practice charge. The union failed to timely appeal that. That was dismissed. Their motion, untimely motion to reconsider was dismissed. But in the end, there was no grievance filed. There was nothing for us. We didn't repudiate anything. We strictly complied with the terms of the collective bargaining agreement. We went through the process. When the process was there, in our reply to the motion to disqualify, we have numerous arbitration cases that have happened between Ovaloo and Triangle. The state law claims here are preempted. When we get past the 301 breach, we get into the state law claims. The state law claims all relate to the testing, whether we fraudulently did the testing, whether we intentionally inflicted emotional distress by doing the testing. But when we get back down to it again, the appellant has considered. And so your position would be that there's no way we can consider the facts underlying any of these state law claims without somehow becoming entangled in the CBA language. Correct. As to testing. You would need to determine whether the testing was acquired by the CBA. Can you tell us in each with respect to the fraud, the NIED, the IIED? We'll start at the beginning. The Wrongful Discharge Act claim. First, they have conceded that the Wrongful Discharge Act and the breach of the implied covenant of good faith and fair dealing were completely preempted. In their response to our motion or our notice of removal, they said those claims are completely preempted. Jurisdiction is proper in the district court. 2003-205? Right. 2003-205 claims. They had said that with respect to those two claims earlier. With respect to the fraud and the intentional infliction of emotional distress claim, as the district court properly noted, there is no way that either of those claims could be analyzed without reviewing the requirements and interpreting the requirements of Section 7 of the collective bargaining agreement that deals with the testing. The collective bargaining says that passing the safety test, shout that we have the authority to do it, that the passing of that test is a condition of employment. All of their claims relate to those testing issues. They say that we didn't tell them about. The fraud apparently is that we told them that he failed when he didn't fail. And so if he felt that he did fail and that he was denied review of his results, he was required to file a grievance? Correct. And the collective bargaining agreement also in the grievance procedure says any employment-related matter is subject to the arbitration procedure, the grievance and arbitration procedure. Again, in the definition of what is a grievance. Your Honor, there is no basis for any argument that any of these claims aren't completely preempted. The first claims in the 2002 claim were completely preempted, the wrongful discharge and the implied government of good faith and fair dealing. When we refiled it in 2003, they filed those exact same complaints as to wrongful discharge and breach of the good faith and fair dealing. When we moved to dismiss them, they conceded them. They didn't even argue about those two. The only two they argued about was the intentional infliction and the fraud claim. And they had no substantive argument then, as they have no substantive argument now on those two claims, other than that somehow or another you could determine these cases without interpreting the collective bargaining agreement. And we submit that there is no way you can do that, that the collective bargaining agreement deals with testing. It deals with their employment relationship. It would not be outrageous for us to discharge an employee for failing a test that we were required by the collective bargaining agreement to have and that a condition of employment is to pass it. It would not be fraudulent for us to require someone to pass the test. And again, if we lied about the test results or something, the process is the collective bargaining process. That is – there is no way we can do that. I mean, what did we lie about? I mean, what are we looking at in the fraud is whether or not we did what we were supposed to do under the collective bargaining agreement. Again, that claim is completely preempted by Section 301. This case has a tortuous history for one reason. Appellant's counsel has continually violated their obligations to the court, their duty of candor to the court, and their duties to their other client in Overland. Your Honor, we would request that, sui sponte, you look at that issue again. We would also request that you affirm the decision of the district court. Thank you. Thank you, Mr. Aiken. Ms. Blair? Good morning, Your Honors. Linda Blair on behalf of Hovenza. Ms. Blair, if we determine that there's no appellate jurisdiction as to Matthews and Williams, do you still have a dog in this fight? And if you include the magistrate's order of February 22, 2006, and that that is not before this court, then no, I do not. The only reason Hovenza is here is because we take issue with the jurisdiction of this court over the issue of the two extra plaintiffs, Williams and Matthews, and the issue of the magistrate's order of February 22, 2006. Hovenza has never been in the 2003-205 case. That's the case where we have the order-dismissing triangle and the real issue before the court today. Hovenza has never been a defendant in that. You will see that there are some filings, such as the notice of appeal, which includes Hovenza as a defendant in that, but has plagued this case throughout its torturous history. That is incorrect. Hovenza has never been a defendant, has never been named in a complaint, has never been served or involved in any way in the civil number 2003-205. Hovenza's only involvement in this case is that it is still a defendant in the original 2002 case, which the court then consolidated with this case. And I am here simply to say that this court cannot disturb the magistrate's order of February 22, 2006 and cannot consider any arguments by Williams and Matthews. As Attorney Engelman has pointed out, the order of the magistrate was not reviewed below, and to get to this level, they needed to review that at the district court level. The plaintiff never filed any objections to that or tried to get it reviewed in any way. Williams and Matthews are simply not in this case, and Hovenza is just simply asking that you refrain from exercising any jurisdiction on those two issues. Thank you, Your Honors. Thank you very much, Ms. Cameron. Ms. Cameron, you may have a rebuttal. Perhaps in your rebuttal you can explain to us why there was never a grievance filed in this case. Pardon me, Your Honor, I didn't get your question. Why was there never a grievance filed in this matter on behalf of Mr. Guerrero? Your Honor, my understanding from the affidavit that's before this court from Mr. Nelson, he attempted to file a grievance and to include Guerrero once it was decided that these layoffs where Triangle was not transforming the information today to the union was going to continue. Mr. Nelson's affidavit said that counsel- What's the appendix citation? Your Honor, Mr. Nelson's affidavit is that- I just- One moment, Your Honor. But in his affidavit he first sent a letter saying that Triangle attempted to only- Mr. Nelson's affidavit is in 215. Your Honor, 215 and 218- 217 and 218, Your Honor. On 217 he said, Triangle, as stated to you earlier when we requested to have Mr. Leontine Guerrero's case added to the arbitration cases, Mr. Engelman's Triangle attorney refused to arbitrate the Guerrero case unless Overloo is willing to dismiss the complaints of Theophilus Williams and Matthias Matthews. Then in his affidavit he also said that he was prevented from presenting the grievance because he has no jurisdiction over Matthews and Williams. How does that prevent him from filing the grievance as a mechanical- He, I am not sure if it prevents- He said he included it, but they objected to it. And they refused to- There was never a document. There's a grievance form, is there not? It can be filed? Yes, Your Honor, but I think- There was never a document filed on behalf of Mr. Guerrero. Whatever Triangle did, said, or may have done or said, there was nothing filed by the union on behalf of Mr. Guerrero. According to the union, Your Honor, they said that they listed the categories of issue, which included they did not file documents per se as to individual names. The document that they filed to arbitrate listed the categories of issue that were to be arbitrated, which was the testing, the layoffs. If you were a lawyer representing the union, wouldn't you suggest to them that they ought to follow the grievance procedure provided in the CBA? Your Honor, we did not represent the union with respect to their day-to-day running of their business. All we represented the union for was to create their existence. The union was supposed to retain separate attorney for their day-to-day operation. We were not involved in what they were supposed to present with respect to a grievance. We did not represent them on their day-to-day action. Only if there's litigation, we represented them with the creation of the union. Well, I mean, this is litigation. Let me ask you, what is the time limit for filing a grievance? The time limit for filing a grievance, I believe, is three days. But Triangle never sent Mr. Guerrero's layoff to the union within that time. Well, Mr. Guerrero knew he was laid off on, what is it, August 2, 2000? Yes, he received a termination that it was a reduction in force layoff, not that he failed the test. That's where our fraud came. They said it was reduction in force, not that he failed the test. That's what his layoff said. Mr. Guerrero did not know he was a member of the union because even though the union was instituted in March of 2002, the first, the Triangle was attempting to break this union. It was not taking dues, and it was not transforming dues to this young union. Mr. Guerrero, when he — Doesn't the record show that union dues were being taken out of Mr. Guerrero's paycheck by late July of 2002? When Mr. Guerrero was laid off, I think there was just one union dues that were, one week of union dues. But he didn't, Your Honor, he is not, he said he didn't read his stuff, so he did not know at the time of his layoff that he was a union member. Even the union did not know he was part of the — He doesn't pay any attention to his paycheck. Your Honor, it was a small amount. It was, I think, less than $10 that was taken out of this one check. It was $11, no, I'm sorry, $7.27. You admit that it appears in the pay stuff and that — Yes, I admit that it appears, but I am saying he did not know that he was a union member until he was asked to do that. All right, we've well exceeded the rebuttal time. Ms. Cameron, thank you very much. Your Honor, can I make one point? If the effect of the magistrate's administerial order is a dismissal, this court can hear it without it having been appealed to the district court because it exceeds the magistrate's authority. All right, thank you. Thank you very much. Thanks to all three of counsel for their arguments in this matter. We'll take the matter under advisory.